**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCHNEIDER NATIONAL CARRIERS, INC., as assignee and subrogee of Church & Dwight, Inc., | No. 4:23-CV-00792 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| KABA & SONS LLC, | |
| Defendant. | |

## MEMORANDUM OPINION

### OCTOBER 19, 2023

## I.     BACKGROUND

This case was initially filed by Schneider National Carriers, Inc. ("SNC") against Kaba & Sons LLC ("Kaba") on May 12, 2023.[1] A summons was issued on May 16, 2023, and an affidavit of service was filed on July 14, 2023.[2] For the past three months Kaba has failed to appear before this Court at all. SNC moved for entry of default on July 22, 2023, and default was subsequently entered by the Clerk of Court.[3] Then, SNC moved for default judgment on August 9, 2023.[4] Still, in all of that intervening time, the Defendant has refused to respond, and therefore the motion is now ripe for disposition. For the reasons that follow, the motion is granted.

---

[1]   Doc. 1.
[2]   Docs. 2-3.
[3]   Docs. 5-6.
[4]   Doc. 7.

## II.     DISCUSSION

### A.     Default Judgment is Warranted

Federal Rule of Civil Procedure 55 allows the District Court to enter default judgment upon application by a party.[5] "Generally, the entry of a default judgment is disfavored, and a court is required to exercise sound judicial discretion in deciding whether to enter default judgment."[6] "This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)."[7] It is "well settled that decisions relating to default judgments are committed to the sound discretion of the district court."[8]

The Court must consider three factors in deciding whether to grant default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[9] "But when a defendant has failed to appear or respond in any fashion to the complaint, this analysis is necessarily one-sided; entry of default judgment is typically appropriate in such circumstances at least until the defendant

---

[5]   Fed. R. Civ. P. 55(b)(2).

[6]   *Kibbie v. BP/Citibank*, 3:cv-08-1804, 2010 U.S. Dist. LEXIS 62346 at *5 (M.D. Pa. June 23, 2010).

[7]   10A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 2685 (Apr. 2020 Update).

[8]   *Pesotski v. Summa & Lezzi, Inc.*, No. 1:17-cv-00221, 2017 U.S. Dist. LEXIS 122285, at *5 (M.D. Pa. Aug. 3, 2017) (citing *Emasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

[9]   *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

comes forward with a motion to set aside the default judgment under Rule 55(c)."[10] In cases where a defendant fails to appear, this Court may enter default judgment "based solely on the fact that the default has occurred."[11]

The Court nevertheless considers those factors for the sake of completeness; in this case, they favor the grant of default judgment. First, SNC would be prejudiced by its "current inability to proceed with [its] action due to Defendant['s] failure to defend."[12] Kaba's decision to not appear before this Court would otherwise prevent Plaintiff from recovering any damages for its claim. Similarly, the second factor points in favor of the grant of default judgment. "Defendant has not responded to the allegations and, thereby, has failed to assert a defense."[13] Finally, there does not appear to be any excuse for Kaba's failure to appear or otherwise respond to SNC's complaint. Service was provided on Samantha Gossley on June 6, 2023, who has been designated by Kaba to accept service on its behalf.[14] Having received service, Kaba has yet to respond or appear in this action. Because Defendant has offered no explanation for its failure to engage in the litigation, the Court finds that Kaba is culpable.[15] Therefore, default judgment is appropriate in these circumstances.

---

[10] *Deutsche Bank Nat. Trust Co. v. Strunz*, No. 1:12-cv-01678, 2013 U.S. Dist. LEXIS 3293 at *4 (M.D. Pa. Jan. 9, 2013).

[11] *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 177 n. 9 (3d Cir. 1990).

[12] *Broad. Music, Inc. v. Kujo Long, LLC*, No. 1:14-cv-00449, 2014 U.S. Dist. LEXIS 113180, at *5 (M.D. Pa. Aug. 14, 2014).

[13] *Pesotski*, 2017 U.S. Dist. LEXIS 122285 at *3.

[14] Doc. 4; Doc. 1 ¶2.

[15] *See Laborers Local Union 158 v. Shaffer*, No. 1:CV-10-1524, 2011 U.S. Dist. LEXIS 40006 (M.D. Pa. Apr. 13, 2011).

A finding that default judgment is warranted, however, "is not the end of the inquiry."[16] First, the Court must consider whether the "unchallenged facts constitute a legitimate cause of action."[17] Although the defaulting party does not concede conclusions of law, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."[18] SNC's complaint seeks damages from Kaba under the Carmack Amendment and for breach of contract. The Court now considers whether the allegations in the complaint, taken as true, state a claim.

### B. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1367, and 49 U.S.C. § 14706(d). Although the parties' contract contains a mandatory arbitration provision,[19] a Defendant waives its right to enforce an arbitration agreement when it knowingly acts inconsistently with that right; that inconsistent act need not cause any prejudice for waiver to be had.[20] As already discussed, Defendant has received service and failed to respond. Defaulting on a claim is indisputably inconsistent with assertion of the right to enforce an arbitration clause. Therefore, the Federal Arbitration Act provides no bar to this Court's jurisdiction over the case.

---

[16]   *Martin v. Nat'l Check Recovery Servs., LLC*, No. 1:12-CV-1230, 2016 U.S. Dist. LEXIS 89745 at *2 (M.D. Pa. July 11, 2016).

[17]   *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F.Supp.2d 537, 541 (E.D. Pa. 2008).

[18]   *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

[19]   Doc. 1-2 at 19, ¶45 ("Arbitration in the manner set forth herein shall be and is the exclusive remedy for any Arbitrable Dispute."); *see* 9 U.S.C. § 2 et seq. (LEXIS 2023).

[20]   *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1712 (2022).

The parties' contract also states that "state or federal courts" in Wisconsin have "exclusive jurisdiction" where the arbitration clause does not apply.[21] However, "forum selection clauses, however interpreted, have no bearing on a court's subject matter jurisdiction."[22] "[T]he applicability of a forum selection or choice-of-law clause is not a jurisdictional issue and a party may waive its right to enforce it."[23] Having failed to appear in Court and thus necessarily having failed to assert the forum selection clause, Kaba has waived its right to enforce that clause. However, the Court will enforce the parties' choice of law provision, which states that the Court shall apply Wisconsin state law.[24]

### C.    The Facts Alleged in the Complaint

The facts alleged in the complaint, which the Court accepts as true for the purposes of determining whether SNC has stated a claim, are as follows.

SNC is a Nevada Domestic Corporation with its principal place of business in Green Bay, Wisconsin.[25] It arranges for the transportation of freight by motor carriers in interstate commerce.[26] Kaba, a Pennsylvania Limited Liability

---

[21] Doc. 1 ¶6.

[22] *Rabinowitz v. Kelman*, 75 F.4th 73, 79 (2d Cir. 2023); *see also Med. Assocs. Of Erie v. Zaycosky*, 77 F.4th 159, 163 (3d Cir. 2023).

[23] *Havens v. Mobex Network Servs.*, No. 11-993 (KSH) (CLW), 2014 U.S. Dist. LEXIS 67144, at *12 (D.N.J. May 14, 2014) (quoting *Botmal Int'l, B.V. v. Int'l Produce Imports, Inc.*, 205 F. App'x 937, 941 (3d Cir. 2006) (unpublished)).

[24] Doc. 1 ¶6.

[25] *Id.* ¶1.

[26] *Id.*

Corporation, is one of those motor carriers.[27] On April 14, 2021, SNC entered into a Master Transportation Agreement (the "Agreement") with Kaba.[28] The Agreement sets out a relationship requiring Kaba to provide transportation services to SNC and its customers.[29]

This agreement authorized Kaba to operate SNC-owned equipment, including trailers, in accordance with shipments tendered to Kaba.[30] But Kaba had to fulfill contractual obligations before operating these vehicles. It had to "thoroughly inspect" them for damages, ensure they were in proper working order, and notify SNC of any damage making the vehicle unsafe.[31] The Agreement provided that, by taking possession or control of the vehicles, Kaba acknowledged that they were free of damage or defects and were in good operating conditions in accordance with applicable regulations and laws.[32]

Kaba agreed to accept sole and exclusive responsibility for any damage, liability, cost, expense, or loss occurring to the vehicles and their contents.[33] It further agreed to defend against any lawsuits relating to the performance of SNC's vehicles, and to pay, reimburse, and indemnify all costs for direct or indirect loss,

---

[27]   *Id.* ¶2.
[28]   *Id.* ¶7.
[29]   *Id.*
[30]   *Id.* ¶8.
[31]   *Id.* ¶¶9-10.
[32]   *Id.* ¶11.
[33]   *Id.*

liability, damage, claim, cost, or expense, including reasonable attorney's fees.[34] It also agreed to maintain insurance.[35]

In May 2021, SNC tendered a shipment of boxed sodium bicarbonate, animal litter, and cleaning compounds (the "Shipment") to Kaba.[36] This shipment belonged to Church & Dwight, SNC's customer.[37] In accordance with the Agreement, Kaba was to transport the Shipment from York, Pennsylvania, to Schodack Landing, New York.[38] SNC authorized Kaba to use an SNC-owned trailer (the "Trailer") to carry out the delivery.[39] Kaba picked up the Trailer from Church & Dwight Co., which was pre-loaded with the Shipment, on May 20, 2021.[40] The Bill of Lading acknowledges that the Shipment was in proper condition for transportation at the time of Kaba's receipt.[41]

However, in violation of the Agreement, Kaba failed to inspect the Trailer before operating it.[42] Unbeknownst to Kaba, two rear passenger side tires were low and bald.[43] As a result, an accident occurred. Around May 26, 2021, the Trailer

---

[34] *Id.* ¶12.
[35] *Id.* ¶¶13-16.
[36] *Id.* ¶17.
[37] *Id.*
[38] *Id.* ¶17; Doc. 1-3.
[39] Doc. 1 ¶18.
[40] *Id.* ¶¶17, 20-21.
[41] *Id.* ¶22.
[42] *Id.* ¶¶23-25.
[43] *Id.* ¶24.

caught fire, causing a total loss of the Shipment and significant damage to the Trailer.[44]

Pursuant to the Federal Motor Carrier Safety Regulations, SNC and Church & Dwight both filed a claim for payment of the actual value of the damaged cargo.[45] SNC paid $20,063.41 to its customer Church & Dwight for the value of the Shipment.[46] In consideration, Church & Dwight assigned its interest in the cargo loss claim to SNC.[47] SNC also claims that it incurred $26,405.82 in "cargo network vendor expense."[48] SNC now seeks damages from Kaba for the total value of the Shipment, damage to the Trailer, court costs and post-judgment interest.[49]

### D.   Plaintiff's Claims

Count II of SNC's complaint seeks indemnification for the Cargo's value, but this contract claim is preempted by Federal law.[50] However, Count I of SNC's complaint does state a valid claim. It requests damages for the costs of the damaged cargo under the Carmack Amendment.[51] The Carmack Amendment requires motor carriers engaged in the interstate transportation of goods to issue a receipt or bill of

---

[44]   *Id.* ¶¶26-27.
[45]   *Id.* ¶¶28-29.
[46]   *Id.* ¶31.
[47]   *Id.*; Doc. 1-4.
[48]   Doc. 1 ¶31.
[49]   *See generally* Doc. 1.
[50]   *Lewis v. Atlas Van Lines, Inc.*, 542 F.3d 403, 407-08 (3d Cir. 2008) (quoting *Georgia, F. & A.R.Co. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)).
[51]   Doc. 1 at 7.

lading for property it receives for transportation.[52] If damage to the goods results over the carrier's "line or route," the Carmack Amendment provides for a private right of action against the carrier.[53] To state a claim under the Carmack Amendment, a plaintiff must establish a prima facia case by proving "(1) delivery of the goods to the initial carrier in good condition, (2) damage of the goods before delivery to their final destination, and (3) the amount of damages."[54] Carriers are "strictly liable for damages" to cargo.[55]

SNC has pled each of these elements. It alleges that the cargo was in good condition when it was pre-loaded into the Trailer at Church & Dwight, that it became damaged on Kaba's route between York, Pennsylvania, and Schodack Landing, New York, and that this resulted in damage to the cargo.[56] And as Church & Dwight's assignee, SNC may enforce Church & Dwight's rights under the Carmack Amendment.[57] As pleading a prima facie case shifts the burden to the Defendant, it is necessarily sufficient to prevail on default judgment.

Counts III and IV of SNC's complaint request compensation for damage to SNC's trailer, both due to actual damage and under the contract's indemnification

---

[52] 49 U.S.C. § 14706(a) (LEXIS 2023).

[53] 49 U.S.C. § 14706(b), (d) (LEXIS 2023).

[54] *Mecca & Sons Trucking Corp. v. White Arrow, LLC*, 763 F.App'x 222, 225 (3d Cir. 2019) (unpublished) (*Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003)).

[55] *Certain Underwriters at the Interest of Lloyds of London v. United Parcel Serv. of Am.*, 762 F.3d 332, 335 (3d Cir. 2014)).

[56] Doc. 1 ¶¶20-26; Doc. 7-2.

[57] Doc. 1-4. SNC also has standing pursuant to 49 U.S.C. § 14706(b).

requirement.[58] Under Wisconsin law, "the elements of any breach of contract claim are (1) the existence of a contract between the plaintiff defendant; (2) breach of that contract; and (3) damages."[59] As discussed, SNC has pled a valid contract between itself and SNC, and the Agreement clearly provides for Kaba's liability where its failure to inspect SNC's vehicles causes damage to them:

> Carrier or its authorized agent, agrees to thoroughly inspect, prior to taking possession, such Non-Carrier Equipment [trailers] for any damages or defects . . . and shall ensure that such Non-Carrier Equipment is in proper working order . . . If carrier detects any damage or defect to such Non-Carrier Equipment, then Carrier shall promptly notify Customer or Broker [SNC] thereof in writing and, to the extent that such damage or defect makes the Non-Carrier Equipment unsafe, illegal or inoperable, then Carrier shall not use or operate such Non-Carrier Equipment. By taking possession or control of the Non-Carrier Equipment, Carrier acknowledges . . . that the Non-Carrier Equipment is free of any damage or defects except as otherwise then reported to Broker or Customer, in writing.[60]

SNC's complaint alleges that Kaba's failure to inspect the trailer prevented it from seeing that the tires were "low and bald," which ultimately caused the damages to the trailer. This is sufficient to allege that a breach of the contractual language stated above led to the complained-of injury, and thus states a claim for breach of contract.

---

[58] Doc. 1 at 10, 12.

[59] *Pagoudis v. Keidl*, 988 N.W.2d 606, 612 (Wis. 2023) (citing B*ew City Redev. Grp., LLC v. The Ferchill Grp.*, 714 N.W.2d 582, 588 (Wis. Ct. App. 2006)).

[60] Doc. 1-2 ¶24; Doc. 1 ¶¶ 60-65.

### E.    Damages

Having found that SNC has stated a legitimate cause of action, the Court considers the amount of damages to which it is entitled. SNC seeks $20,063.41 for the actual cost of lost cargo for whcih reimbursed Church & Dwight. These damages flow directly from the Carmack Amendment liability, and they are measured by what the Carmack Amendment ordinarily provides for: market value.[61] SNC has attached an invoice to its motion showing that the shipment was valued at $20,063.41 by SNC's insurance company, along with an Affidavit of Damages;[62] this is sufficient evidence of damages on a motion for default judgment.[63]

SNC also alleges that it "incurred $26,405.82 in cargo rework vendor expense related to the damaged cargo."[64] SNC does not clarify what "cargo rework vendor expense" is, but SNC's attachments indicate that these costs stem from the clean-up after Kaba's accident, including sweeping and disposing of the damaged cargo.[65] The Carmack Amendment's scope is "broad enough to embrace 'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation,"[66] so long as they are "foreseeable to a reasonable person."[67] This

---

[61]  *Robert Burton Assocs. v. Preston Trucking Co.*, 149 F.3d 218, 221 (3d Cir. 1998).

[62]  Docs. 7-2, 7-5.

[63]  49 U.S.C. § 14706(b).

[64]  Doc. 1 ¶30.

[65]  Doc. 7-5.

[66]  *Mecca & Sons Trucking Corp. v. White Arrow, LLC*, 763 F. App'x 222, 227 (3d Cir. 2019) (unpublished) (quoting *United Parcel Serv. of Am.*, 762 F.3d at 335).

[67]  *Paper Magic Grp., Inc. v. J.B. Hunt Transp., Inc.*, 318 F.3d 458, 461 (3d Cir. 2003) (cleaned up) (quoting *Hector Martinez & Co. v. S. Pac. Transp. Co.*, 606 F.2d 106, 109 (5th Cir. 1979)).

includes the costs of transporting, storing, and disposing of damaged cargo, which SNC did on Church & Dwight's behalf.[68] As with the cargo shipment, SNC has provided an invoice setting out the cost of these services, which is also sufficient.[69]

Finally, SNC alleges that Kaba's breach of contract incurred a total of $52,965.06 in damages to its trailer, loss of use, and tow expense, and provides an invoice for these expenses as well.[70] The Court therefore finds Plaintiff is entitled to the total amount of damages requested, $99,434.29.

SNC also requests court costs[71] and post-judgment interest against Kaba.[72] However, it fails to provide any accounting as to what court costs are due, and fails to specify why the Court should award post-judgment interest, or at what rate. The Court will give leave to file supplemental briefing on these issues; otherwise, SNC's damages will be limited to those already discussed.

---

[68] *Mecca*, 763 F. App'x at 227; *Kraft Foods, Inc. v. Transp. Made Simple, Inc.*, No. 09-3407 (WHW), 2010 U.S. Dist. LEXIS 29523, at *10 (D.N.J. Mar. 25, 2010).

[69] Doc. 7-5.

[70] Doc. 7-4.

[71] SNC initially requested attorney's fees in its complaint but seeks only court costs in its Motion for Default Judgment. The Court limits its analysis to the relief sought in the Motion.

[72] Doc. 7 ¶¶8-9.

### III.   CONCLUSION

Default judgment will be entered in favor of SNC against Kaba for $46,469.23 under the Carmack Amendment and for $52,965.06 for breach of contract, for a total of $99,434.29. SNC will have fourteen days to file supplemental briefing as what damages it is owed for court costs and post-judgment interest.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge